## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE HAIN CELESTIAL GROUP, INC. and
HAIN-CELESTIAL CANADA, ULC,

        Plaintiffs,

      v.

SUNOPTA GRAINS AND FOODS INC.,

        Defendant.

Civil Action No.

## COMPLAINT

Plaintiffs The Hain Celestial Group, Inc. and Hain-Celestial Canada, ULC ("Plaintiffs" or "Hain Celestial"), by and through their undersigned attorneys, as and for their Complaint herein, alleges as follows:

## NATURE OF THE ACTION

1.      This action is necessitated by the failure of Defendant SunOpta Grains and Foods Inc. ("Defendant" or "SunOpta") to honor the terms of the parties' written Transition Services Agreement dated as of April 15, 2021 (the "TSA"),[1] which was entered into as part of a larger corporate transaction between the parties. Specifically, SunOpta has unreasonably and unjustifiably refused to pay hundreds of thousands of dollars in unpaid invoices for services that Hain Celestial indisputably provided to SunOpta under the TSA.

2.      Indeed, SunOpta has never disputed that (i) Hain Celestial provided the services reflected in the unpaid invoices to SunOpta, (ii) SunOpta received the benefit of those services, or

---

[1] A copy of the TSA is attached hereto as **Exhibit 1**. The TSA was subsequently amended to provide for limited changes relating to certain Universal Product Codes associated with Hain Celestial's products and related obligations that are not at issue in this action.

00045285.2

(iii) the amounts set forth in the unpaid invoices represent the actual costs of the services provided by Hain Celestial.

3.      In fact, after Hain Celestial sent SunOpta a formal "Claim Notice" under the TSA – a contractual prerequisite to the filing of this action – **SunOpta failed to respond and has therefore contractually "agreed that an amount equal to the entire Claimed Amount [i.e., the full amount of the unpaid invoices] shall be payable to [Hain Celestial] and such Claimed Amount shall be promptly paid to [Hain Celestial]**."

4.      Despite the foregoing, SunOpta has failed and refused to pay any portion of the amount due, leaving Hain Celestial no choice but to bring this action against SunOpta for breach of contract and, in the alternative, unjust enrichment.

## THE PARTIES

5.      Plaintiff The Hain Celestial Group, Inc. is a Delaware corporation with its principal place of business in New York.  The Hain Celestial Group, Inc. is an organic and natural food and personal care products company with operations in North America, Europe, Asia and the Middle East.

6.      Plaintiff Hain-Celestial Canada, ULC is an unlimited liability corporation organized under the laws of Nova Scotia, Canada, and an indirect, wholly owned subsidiary of Plaintiff The Hain Celestial Group, Inc.

7.      Defendant SunOpta Grains and Foods Inc. is a Minnesota corporation with its principal place of business in Minnesota.  Defendant specializes in the sourcing, processing, and production of organic, natural and non-GMO plant- and fruit-based food and beverage products.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as it is an action brought by a citizen of a state within the United States and a citizen of a foreign state against

00045285.2                                    2

a citizen of a different state within the United States, and the matter in controversy exceeds the sum or value of $75,000 exclusive of costs and interest.

9.    Venue is proper in this district pursuant to section 6.09 of the TSA, wherein Defendant expressly agreed that this Court is the proper venue to resolve this dispute, and has waived any objection it may have had or may have that this Court is an improper or inconvenient forum for the resolution of this dispute.

10.    This Court has personal jurisdiction over Defendant as it expressly agreed in the TSA to "irrevocably submit[] to the exclusive jurisdiction" of this Court "for itself and with respect its property, generally and unconditionally, with regard to any such Action arising out of or relating to [the TSA] or the transactions contemplated hereby."

**FACTUAL BACKGROUND**

**I.    The Transaction And The Relevant Terms Of The TSA**

11.    In or about April 2021, Hain Celestial agreed to sell to SunOpta the North American rights to source, market, sell, and distribute two of Hain Celestial's brand names – Dream® and WestSoy® – and related private label products.  The parties' agreement was memorialized in an Asset Purchase Agreement dated as of April 15, 2021 (the "APA").

12.    In connection with the sale, the parties also entered into the TSA, pursuant to which Hain Celestial agreed to provide certain Services (as defined therein and discussed further below) to SunOpta for a transitional period after the closing of the transaction.  This is a typical arrangement following the sale of a business, as it helps facilitate the smooth transition of the purchased business from seller to buyer.

13.    The Services under the TSA included, among others, (1) Finance and Administration Support, (2) Information Systems Support, (3) Consumer Services, (4) Quality Assurance, (5) Supply Chain Operations, (6) Sales Support, and (7) Business Transition Services,

as described in greater detail in Exhibit A to the TSA.  For those Services, SunOpta agreed to pay

Hain Celestial "Fixed Monthly Service Fees" – a fixed amount contemplating that SunOpta would

need, and Hain Celestial would provide, the enumerated services.  *See* TSA Ex. A; *see also id.*

§ 2.03.

14.     The Services also included various "Pass-Through Costs," including but not limited

to amounts paid by Hain Celestial to suppliers on SunOpta's behalf, third-party transportation,

logistics and warehousing costs, trade and other customer deductions, and sales brokerage services

costs.  *See* TSA Ex. B; *see also id.* § 2.03.

15.     Under Section 2.01 of the TSA, the parties agreed that the Services would continue

for at least five (5) months, *i.e.*, until September 15, 2021, but could be extended upon SunOpta's

request pursuant to Section 2.02.

16.     The parties further agreed that Hain Celestial would issue monthly invoices and

reconciliation statements for the Services provided, *see* TSA § 2.03(b), and absent any objection

from SunOpta by written notice within thirty (30) calendar days of receipt, specifying in reasonable

detail the reasonable basis for such objection, the invoice and reconciliation statement "shall be

final and binding," *see id.* § 2.03(c).

17.     In addition to monthly invoices, the TSA also provided for the issuance and

payment of additional invoices for "true-up adjustments."  Because certain Pass-Through Costs

under the TSA would necessarily be estimated by Hain Celestial, the parties agreed that Hain

Celestial would later reconcile its estimates based on the actual costs and issue invoices to SunOpta

for any additional amounts due.  *See* TSA § 2.03(b) & Ex. C thereto.

18.     The items subject to true-up adjustments included: (1) Customer Deductions –
Trade Related, (2) Customer Deductions – Non Trade/Order Fulfilment, (3) Freight Costs, and
(4) Warehousing Costs.  *See* TSA Ex. C.

19.     Pursuant to Section 5.02(b) of the TSA, SunOpta expressly agreed to "defend,
indemnify, and hold harmless" Hain Celestial, its affiliates, and their representatives, "from and
against any and all Adverse Consequences[2] (i) incurred by [Hain Celestial] in connection with
[SunOpta's] breach of any covenant or agreement under [the TSA]."  TSA § 5.02(b).

20.     SunOpta further agreed that "[t]he validity, interpretation, and effect of [the TSA]
shall be governed exclusively by the Laws of the State of New York, excluding the 'conflict of
laws' rules thereof."  TSA § 6.08.

## II.    Hain Celestial Provides Services Pursuant To The TSA But SunOpta Refuses To Tender Payment For All Amounts Due

21.     Beginning in April 2021 and continuing through the end of March 2022, Hain
Celestial provided Services to SunOpta pursuant to the terms of the TSA.

22.     During this same time period, Hain Celestial issued monthly TSA settlement
statements, each of which reflected the specific Services provided and the associated costs for the
month, including any Fixed Monthly Service Fees and Pass-Through Costs.

23.     Upon receipt of each monthly settlement statement, through and including the
March 2022 TSA settlement statement, SunOpta would respond **in writing** that the statement was
"confirmed," indicating SunOpta's express acknowledgement that Hain Celestial continued to

---

[2] "Adverse Consequences" are defined to include "all Actions, Orders, damages, dues, penalties, fines, costs, amounts paid in settlement, Liabilities, Taxes, Liens and losses (including costs of investigation, all reasonable accounting, consultant and attorneys' fees, court costs, costs of expert witnesses and other expenses relating to any of the foregoing)."  *See* APA Annex I; *see also* TSA p.1 ("Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the [APA].").

provide Services through March 2022, which SunOpta requested and required.  Payment would issue shortly thereafter.

24.    By way of example, the November 2021 TSA settlement statement included nearly $1 million in "Customer Collections," *i.e.*, amounts that Hain Celestial collected from customers on SunOpta's behalf, which the parties expressly agreed was a Service provided pursuant to the TSA.  *See* TSA Ex. A, § I.A.

25.    The November 2021 TSA settlement statement also included numerous "Pass-Through Costs," including, among others, customer deductions, accounts payable, inventory receipts, warehousing costs, freight costs, and commissions.

26.    On January 13, 2022, SunOpta wrote to Hain Celestial: "The November TSA settlement has been confirmed."

27.    Similarly, the March 2022 TSA settlement statement included additional Customer Collections, and on May 18, 2022, SunOpta wrote to Hain Celestial: "The March TSA settlement is confirmed."

28.    On or about June 9, 2022, following SunOpta's May 18 approval, the March 2022 TSA settlement statement was paid.

29.    Also in June 2022, following payment of the March 2022 TSA settlement statement and after Hain Celestial determined the actual costs of the Services subject to true-up adjustments, it initiated a discussion of the true-up process with SunOpta.

30.     Thereafter, Hain Celestial provided SunOpta a final invoice and reconciliation statement, reflecting true-up adjustments in the amount of $355,017.12 and an additional amount in Canadian dollars of CAD 105,166.00 (the "True-Up Invoice").[3]

31.     SunOpta did not object to the True-Up Invoice "by written notice" pursuant to the TSA's notice provisions[4] within thirty (30) calendar days of receipt, specifying in reasonable detail the reasonable basis for such objection.

32.     As a result, the True-Up Invoice is "final and binding." *See* TSA § 2.03(c).

33.     In fact, SunOpta has never disputed that (i) Hain Celestial provided the Services reflected in the True-Up Invoice, (ii) SunOpta received the benefit of those Services, and (iii) the amounts set forth in the True-Up Invoice represent the actual costs of the Services provided by Hain Celestial.

34.     Yet, despite due demand, SunOpta has failed and refused to pay any portion of the True-Up Invoice in breach of the TSA.

35.     Accordingly, by letter dated December 16, 2022, Hain Celestial sent SunOpta a Claim Notice pursuant to Section 6.3(a) of the APA,[5] and a Notice of Dispute under Section 1.07 of the TSA, a copy of which is attached hereto as **Exhibit 2**.

---

[3] Based on today's exchange rates, CAD 105,166.00 is approximately $76,438.33.  Thus, the total amount due under the True-Up Invoice is presently estimated to be $431,455.45.

[4] The TSA incorporates by reference the notice provisions set forth in the APA.  *See* TSA § 6.01. Section 7.11 of the APA provides that "[a]ll notices, requests, demands and other communications under this Agreement shall be in writing and delivered in person, or sent by reputable overnight delivery service" to the addresses set forth therein.

[5] Section 5.03 of the TSA incorporates by reference the indemnification procedures set forth in Section 6.3 of the APA.

36.     SunOpta did not deliver a written response within thirty (30) days after delivery of the Claim Notice pursuant to Section 6.3(b) of the APA, in which it disputed the amount due and provided a basis for any dispute.

37.     As a result, SunOpta has "agreed that an amount equal to the entire Claimed Amount [i.e., the full amount of the unpaid invoices] shall be payable to [Hain Celestial] and such Claimed Amount shall be promptly paid to [Hain Celestial]."

38.     By letter dated February 13, 2023, Hain Celestial notified SunOpta of its failure to respond to the Claim Notice and demanded immediate payment of the True-Up Invoice.  A copy of Hain Celestial's letter dated February 13, 2023 is attached hereto as **Exhibit 3**.

39.     SunOpta again failed and refused to pay any portion of the True-Up Invoice.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>
**(Breach of Contract)**

40.     Plaintiffs repeat and reallege each of the allegations above as if such allegations were more fully set forth herein.

41.     The TSA is a valid and binding contract, pursuant to which Defendant agreed, among other things, to pay Plaintiffs for the Services they provided to Plaintiff.

42.     Plaintiffs have performed all of their obligations under the TSA and complied with all conditions precedent to filing this claim.

43.     Defendant breached the terms of the TSA by failing to pay the True-Up Invoice, despite due demand.

44.     As a direct and proximate result of Defendant's breach, Plaintiffs have been damaged in an amount to be determined at trial, but presently estimated to be in excess of $430,000, plus interest, costs, expenses, and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### (In the Alternative, Unjust Enrichment)

45.     Plaintiffs repeat and reallege each of the allegations above as if such allegations were more fully set forth herein.

46.     Plaintiffs provided the services reflected in the True-Up Invoice, and Defendant received the benefit of those services.

47.     The amounts set forth in the True-Up Invoice reflect the actual costs of those services.

48.     Defendant has failed and refused to pay for any portion of the amount set forth in the True-Up Invoice.

49.     Accordingly, in the alternative to Plaintiffs' breach of contract claim, Defendant has been unjustly enriched at Plaintiffs' cost and expense.

50.     It is against equity and good conscience for Defendant to receive the benefit of the services provided by Plaintiffs without paying any money to Plaintiffs in return.

51.     As a direct and proximate result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, but presently estimated to be in excess of $430,000, plus interest, costs, expenses, and attorneys' fees.

**WHEREFORE**, Plaintiffs demand judgment as follows:

A.     On the First Cause of Action, an award of compensatory damages in favor of Plaintiffs and against Defendant in an amount to be determined at trial, but presently estimated to be in excess of $430,000, plus interest, costs, expenses, and attorneys' fees;

B.     On the Second Cause of Action, in the alternative, an award of compensatory damages in favor of Plaintiffs and against Defendant in an amount to be

determined at trial, but presently estimated to be at least $430,000, plus interest, costs, expenses, and attorneys' fees.

Dated: March 16, 2023                          **CHIPMAN BROWN CICERO & COLE, LLP**

                                               _/s/ Joseph B. Cicero_
                                               Joseph B. Cicero (#4388)
                                               Gregory E. Stuhlman (#4765)
                                               Thomas A. Youngman (#6968)
                                               Hercules Plaza
                                               1313 North Market Street, Suite 5400
                                               Wilmington, Delaware 19801
                                               (302) 295-0191
                                               cicero@chipmanbrown.com
                                               stuhlman@chipmanbrown.com
                                               youngman@chipmanbrown.com

                                               _Attorneys for Plaintiffs_

00045285.2                                     10