IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE HAIN CELESTIAL GROUP, INC. and HAIN-CELESTIAL CANADA, ULC,<br><br>    Plaintiffs,<br><br>    v.<br><br>SUNOPTA GRAINS AND FOODS INC.,<br><br>    Defendant. | C.A. No.: 23-282-JLH |

## **MEMORANDUM ORDER**

Pending before the Court is Plaintiffs' Motion for Summary Judgment on Count I (D.I. 15), which alleges breach of contract. The Court granted Plaintiff's request to file an early summary judgment motion (D.I. 14); subsequently, the case was reassigned to me. For the reasons summarized below, Plaintiffs' motion for summary judgment is DENIED.

    1.    In April 2021, Plaintiffs and Defendant entered into an Asset Purchase Agreement ("APA") and a Transition Services Agreement ("TSA"). (D.I. 17 ¶¶ 2, 3, Ex. 1, Ex. 2.) Pursuant to the APA, Plaintiffs agreed to sell Defendant certain rights to source, market, sell, and distribute two of Plaintiffs' brand name beverages and related private label products. (D.I. 17, Ex. 1.) Pursuant to the TSA, Plaintiffs agreed, among other things, to provide certain "Services" to Defendant for a period of time following the closing of the APA. The TSA provided that Plaintiffs would invoice Defendant for those Services. (D.I. 17, Ex. 2 § 2.03, Ex. C.) The invoices were to include estimates of certain deductions and costs. (*Id.*) The TSA gave Plaintiffs a rolling six-month "true-up" window after the Services were provided to seek a "true-up adjustment" and reconcile estimates. (D.I. 17, Ex. 2 at Ex. C.) Plaintiffs had to submit any true-up to Defendant within the earlier of (1) 180 days of the applicable month for which Plaintiffs sought a true-up or

(2) six months after the TSA expired. (*Id.*) Pursuant to Section 2.03(c) of the TSA, any invoices issued by Plaintiffs "shall be final and binding . . . if [Defendant] fails to object by written notice (the 'Objection Notice') specifying in reasonable detail the reasonable basis for such objection" within thirty (30) calendar days of receipt of an invoice. (*Id.* § 2.03.) Pursuant to Section 6.01 of the TSA, "[a]ll notices, requests, consents, claims, demands, waivers and other communications hereunder (other than Invoice and Reconciliation Statements) will be given in accordance with the [APA]," which provides for delivery in person or sent by reputable overnight delivery service to the persons specified in Section 7.11 of the APA. (*Id.* § 6.01; D.I. 17, Ex. 1 § 7.11.)

   2. The record before the Court reflects a dispute between the parties about when the TSA expired. Defendant says it expired in September 2021 because Defendant ceased providing Services in September 2021, and the TSA was never extended. (D.I. 19 at 13–14.) Plaintiffs say that the TSA was still in force at least through March 2022, and it points to evidence that, Plaintiffs contend, shows that Defendant was still providing Services through March 2022. (D.I. 16 at 13; D.I. 22 at 6–7.) The Court has reviewed the parties' evidence and arguments and concludes that there is a genuine factual dispute. For purposes of ruling on Plaintiffs' motion for summary judgment only, the Court will assume that Defendant is correct that the TSA expired in September 2021. Thus, pursuant to the TSA, Plaintiffs were required to submit their true-up expenses to Defendant within six months, *i.e.*, by March 2022.

   3. On September 12, 2022, Plaintiffs emailed Defendant a purported true-up statement concerning Services allegedly performed by Plaintiffs from April 2021 to February 2022. (D.I. 17 ¶ 7, Ex. 11, Ex. 12.) Plaintiffs requested payment of $335,017.12. (*Id.*) Defendant responded in writing that Plaintiffs' request was "not a valid claim." (D.I. 17, Ex. 13; D.I. 20 ¶ 20.) Then, on October 14, 2022, Plaintiffs sent a purportedly "updated" true-up statement that requested an

additional CAD 105,166.00.  (D.I. 17 ¶ 8, Ex. 13.)  Plaintiffs' correspondence acknowledged its understanding that Defendant was disputing the request for payment; however, Defendant did not deliver an Objection Notice in accordance with § 2.03 of the TSA.  (D.I. 17, Ex. 1 § 7.11, Ex. 2 §§ 2.03, 6.01, Ex. 13.)

4. Defendant refused to pay Plaintiffs' October 2022 true-up invoice, and Plaintiffs filed this breach of contract action.  Plaintiffs' first argument for summary judgment is essentially this: notwithstanding Plaintiffs' own failure to invoice a final true-up in accordance with the deadline set forth in the TSA, Defendant's failure to object to Plaintiffs' (late) invoice in accordance with the 30-day deadline set forth in the TSA means that Plaintiffs' invoice is "final and binding" and therefore Plaintiffs win.  (D.I. 16 at 10–14.)

5. For purposes of the argument I'll assume that, under New York law,[1] Plaintiffs' failure to deliver the final invoice and reconciliation statement until six months after the deadline did not absolve Defendant of its duty to pay the invoice.  *See, e.g.*, *Wolfson v. Faraci Lange, LLP*, 959 N.Y.S.2d 792, 794 (N.Y. App. Div. 2013).  Notwithstanding its own failure to adhere to a deadline in the TSA, Plaintiffs want to hold Defendant to the TSA's 30-day deadline to object to the invoice using a certain procedure.  But, under New York law, strict compliance with contractual notice provisions may be excused where the adversary party does not claim the absence of actual notice or prejudice by the deviation.  *See, e.g., Suarez v. Ingalls*, 723 N.Y.S.2d 380, 381 (N.Y. App. Div. 2001); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, 234 F. Supp. 3d 558, 569 (S.D.N.Y. 2017) (email notice rather than written notice sufficient where defendants received notice and did not claim any prejudice); *Thor 725 8th Ave. LLC v. Goonetilleke*, 138 F. Supp. 3d 497, 509–510 (S.D.N.Y. 2015) (actual notice to a location other than the location specified in the contractual notice provision is

---

[1] The parties agree that New York law applies.  (D.I. 16 at 10; D.I. 19 at 12.)

3

sufficient where defendants received actual notice and were not in any way prejudiced as a result of the deviation); *Thurston v. Sisca*, No. 14-cv-1150, 2016 WL 4523930, at *6 (N.D.N.Y. Aug. 22, 2016) (email notice did not violate the notice provision because it did not "undermine[ ] any of the objectives of the notice-requirement provision contained in . . . the Purchase Contract . . . ."); *Iskalo Elec. Tower LLC v. Stantec Consulting Servs., Inc.*, 916 N.Y.S.2d 373, 375 (N.Y. App. Div. 2010) (notice provided by facsimile only to defendant's corporate counsel was effective even though contract required notice to defendant's chief executive officer).  The limited record before the Court suggests that Plaintiffs were well aware that Defendant objected.  (D.I. 17, Ex. 13; D.I. 20 ¶¶ 21–25; D.I. 20, Ex. 2.)  For example, Defendant disputed Plaintiff's invoice by way of email just three days after receipt.  (D.I. 17, Ex. 13; D.I. 20 ¶ 20.)  Then, after Plaintiffs emailed an "updated" true-up statement that on its face evidenced Plaintiffs' knowledge that Defendant disputed it, the parties met to discuss the dispute.  (D.I. 17, Ex. 13; D.I. 20 ¶¶ 22, 23.)  And following that, more emails about the dispute were exchanged.  (D.I. 20 ¶¶ 24, 25, Ex. 2.)  The Court cannot say as a matter of law that Defendant's failure to strictly comply with the TSA provision would not be excused under New York law.  Plaintiffs' first argument does not entitle it to summary judgment.

6.  Plaintiffs' second argument for summary judgment is similar, and the Court similarly rejects it.  Section 6.3(a) of the APA requires a party seeking "indemnification" from the other party to give a written "Claim Notice."  (D.I. 17, Ex. 1 § 6.3(a).)  Section 6.3(b) of the APA requires a written response to a Claim Notice within 30 days, otherwise the party "shall be deemed to have agreed that an amount equal to the entire Claimed Amount shall be payable."  (*Id.* § 6.3(b).)  Plaintiffs sent Defendant a Claim Notice by letter dated December 16, 2022, which asserted the same right to a true-up as the September and October 2022 invoices.  (D.I. 17, Ex. 14; D.I. 20

¶ 26.) Although Defendant did not respond to the Claim Notice in the manner set forth in the APA before the 30-day deadline, the record reflects that Plaintiffs were well aware that Defendant disputed the claim, as the parties actually met again to discuss the dispute within 30 days. (D.I. 20 ¶¶ 26, 27.) The Court cannot say as a matter of law that Defendant's failure to strictly comply with the APA provision would not be excused under New York law.

7. Plaintiffs motion for summary judgment is DENIED.

8. The case is referred to a United States Magistrate Judge for purposes of exploring mediation.

Dated: November 1, 2024

                                                The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE